PER CURIAM
*994 This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Jose W. Vega, a disbarred attorney.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent's prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1993. He was subsequently admitted to the Texas Bar in 2002, and to the New York Bar in 2004.
In 2001, respondent consented to be publicly reprimanded by the Louisiana Attorney Disciplinary Board. The misconduct at issue involved respondent's violations of Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client) and 1.16 (failure to properly terminate the representation of a client) of the Louisiana Rules of Professional Conduct in connection with his representation of clients in two immigration proceedings in Louisiana between 1995 and 1997.
In 2013, we publicly reprimanded respondent as reciprocal discipline based on public reprimands he received in two separate proceedings in Texas for conduct that occurred between 2007 and 2009. In re: Vega , 13-1456 (La. 9/20/13), 124 So.3d 456. The basis for the disciplinary charges in Texas involved respondent's failure to communicate with clients, failure to properly terminate the representation of clients, and failure to respond to a client's request for a refund of fees.
In 2016, we disbarred respondent as reciprocal discipline after he resigned from the practice of law in Texas in lieu of discipline.[1] In re: Vega , 16-0816 (La. 9/6/16), 198 So.3d 1176 (" Vega III "). Respondent was charged in Texas with multiple rule violations stemming from numerous immigration matters, including violations of rules governing the refund of unearned fees, client communications, cooperation with disciplinary investigations, supervision of non-attorney assistants, and neglect of client matters. The misconduct at issue in Vega III began as early as 2007 in some matters and continued through February 16, 2016, when the Supreme Court of Texas accepted respondent's resignation.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the instant proceeding.
FORMAL CHARGES
In September 2012, Terisita De Jesus Montejano, a Texas resident, hired respondent to represent her in an immigration matter. She paid respondent $3,000 for the representation. In August 2014, respondent appeared with Ms. Montejano in a Texas immigration court, at which time he instructed her to file a motion for change of venue in proper person. Ms. Montejano filed the motion as directed, but it was denied as untimely. The immigration judge set a removal hearing for November 2014. At the hearing, respondent was unprepared and Ms. Montejano was ordered deported. Respondent appealed the ruling, but he did not prevail. Ms. Montejano then hired a new attorney to assist her with her immigration status.
In April 2016, Ms. Montejano filed a disciplinary complaint against respondent with the ODC. A copy of the complaint was *995 sent to respondent via certified mail to his office address and secondary registration address, both in Houston. The complaints were returned to the ODC with the notations "Return to Sender" and "Unable to Forward."
The ODC contacted respondent via telephone. At that time, respondent provided the ODC with a new address in Houston and indicated he would be updating his contact information with the Louisiana State Bar Association. In May 2016, a copy of the complaint was sent to the new registered primary address. The complaint was returned to the ODC with the notations "Return to Sender" and "Unclaimed."
The ODC eventually reached respondent via cell phone. At that time, respondent indicated he would be in Louisiana and would personally pick up the copy of the complaint on June 28, 2016. When he failed to do as promised, the ODC contacted respondent again. At that time, respondent indicated that he would personally pick up the complaint on September 9, 2016. He again failed to do as promised.
DISCIPLINARY PROCEEDINGS
In December 2016, the ODC filed formal charges against respondent, alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4 (failure to communicate with a client), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).[2]
Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee's consideration.
Hearing Committee Report
After considering the ODC's deemed admitted submission, the hearing committee determined that the factual allegations in the formal charges were deemed admitted and proven by clear and convincing evidence. Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee determined that respondent violated duties owed to his client and the disciplinary agency. He acted intentionally in failing to communicate with Ms. Montejano and in failing to diligently represent her. He also acted intentionally in failing to cooperate in the disciplinary investigation. His misconduct caused the client to be ordered removed from this country immediately. His misconduct caused harm to the ODC by forcing the agency to unnecessarily expend its limited resources. Based on the ABA's Standards for Imposing Lawyer Sanctions , the committee *996 determined that the applicable baseline sanction is suspension.
In aggravation, the committee found a prior disciplinary record, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the rules or orders of the disciplinary agency, vulnerability of the victim, and substantial experience in the practice of law (admitted 1993). The committee found that no mitigating factors are present.
Considering the facts of this case, and the jurisprudence of the court, the committee recommended respondent be suspended from the practice of law for one year and one day, to run concurrent with his ongoing disbarment. The committee also recommended respondent be assessed with all costs of this proceeding.
Neither respondent nor the ODC filed an objection to the hearing committee's report.
Disciplinary Board Recommendation
After review, the disciplinary board adopted the factual findings and legal conclusions of the hearing committee. The board also determined that the committee correctly applied the Rules of Professional Conduct.
The board determined that respondent knowingly and intentionally violated duties owed to his client, the legal system, and the legal profession. He knowingly and intentionally failed to communicate with his client and failed to diligently represent her. His conduct caused actual and serious harm to his client, who was ordered removed from the United States to Mexico. His unpreparedness at the removal hearing reflects respondent's disregard for the legal system and the legal profession. Furthermore, respondent knowingly evaded notice of the complaint and failed to cooperate with the disciplinary investigation, causing damage by forcing the unnecessary expenditure of the limited resources of the disciplinary agency. Based on the ABA's Standards for Imposing Lawyer Sanctions , the board determined that the applicable baseline sanction is disbarment.
In addition to the aggravating factors found by the committee, the board found a pattern of misconduct and multiple offenses. The board agreed that no mitigating factors are present.
Turning to the issue of an appropriate sanction, the board noted that respondent's substantive misconduct occurred during the same time period as the misconduct subject of Vega III . Accordingly, the board determined that the approach of Louisiana State Bar Ass'n v. Chatelain , 573 So.2d 470 (La. 1991), is applicable to the substantive misconduct in this case.[3] For respondent's failure to cooperate, which the board determined occurred outside of the time period subject to the Chatelain analysis, the board recommended the imposition of additional discipline. The board noted that because this is an original disciplinary proceeding, having been initiated by a disciplinary complaint filed with the Louisiana ODC, the constraints of Supreme Court Rule XIX, § 21(D), which set forth the standard for the imposition of discipline on a reciprocal basis, do not apply. For this reason, the totality of all of respondent's misconduct should be independently reviewed and considered in determining the appropriate sanction to be imposed under Louisiana standards.
The board considered respondent's numerous acts of misconduct forming the basis of Vega III , for which disbarment *997 was imposed, his additional substantive misconduct, which resulted in serious harm to a vulnerable client, as well as his knowing failure to cooperate with the disciplinary investigation. The board acknowledged while his misconduct does not fit squarely within the permanent disbarment guidelines, his consistent pattern of misconduct and failure to address his professional obligations have demonstrated a clear lack of moral fitness. Accordingly, the board recommended he be permanently disbarred. The board also recommended that respondent be assessed with the costs and expenses of this proceeding.
Neither respondent nor the ODC filed an objection to the disciplinary board's recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const. art. V, § 5 (B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks , 09-1212 (La. 10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan , 01-3058 (La. 1/10/03), 838 So.2d 715.
The record in this deemed admitted matter supports the rule violations found by the disciplinary board. Essentially, respondent neglected his client's immigration matter and failed to communicate with her. He then failed to cooperate with the ODC in its investigation. Based on these facts, respondent has violated the Rules of Professional Conduct as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent's actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass'n v. Reis , 513 So.2d 1173 (La. 1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington , 459 So.2d 520 (La. 1984).
The record further supports a finding that respondent knowingly and intentionally violated duties owed to his client, the legal system, and the legal profession, resulting in actual harm to his client. We agree with the board that the baseline sanction for this type of misconduct is disbarment. We also agree with the aggravating factors found by the board, and the finding that there are no mitigating circumstances present.
Turning to the issue of an appropriate sanction, we agree with the disciplinary board's finding that the misconduct in both Vega III and the current matter occurred during the same time frame and involved *998 the same type of misconduct. As previously discussed, the substantive misconduct forming the basis of Vega III commenced as early as 2007 and continued through February 2016, when the Supreme Court of Texas accepted respondent's resignation. This court disbarred respondent as reciprocal discipline on September 6, 2016. In the instant matter, the substantive misconduct commenced when respondent was retained to represent Ms. Montejano in September 2012 and continued through April 2016, when Ms. Montejano submitted her disciplinary complaint. Accordingly, the discipline to be imposed should be determined as if both proceedings are being considered simultaneously, pursuant to the approach established in Chatelain , supra.
Had Ms. Montejano's complaint been added to the proceedings in Vega III , we would have permanently disbarred respondent. As a result of his conduct, respondent's vulnerable client was ordered deported from the United States to Mexico. Taken together with the misconduct in Vega III , it is obvious that respondent does not possess the moral fitness to practice law in this state. Rather, his consistent pattern of misconduct and failure to attend to his professional obligations indicates that he should not be allowed the opportunity to return to the practice of law in the future.
Based on this reasoning, we find permanent disbarment is the appropriate sanction in this case. Accordingly, we will accept the disciplinary board's recommendation and permanently disbar respondent.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Jose W. Vega, Louisiana Bar Roll number 22216, be and he hereby is permanently disbarred. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

Pursuant to the acceptance of his resignation, the Supreme Court of Texas set forth conditions for respondent's reinstatement to the practice of law. Because Louisiana prohibits reinstatement following resignation in lieu of discipline, we imposed disbarment, which is the most equivalent form of reciprocal discipline.

Rule 8.5(a) of the Louisiana Rules of Professional Conduct provides that a lawyer admitted to practice in Louisiana "is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs." As to the choice of which jurisdiction's rules of professional conduct are to be applied in such circumstances, Rule 8.5(b)(2) states that the rules of the jurisdiction in which the lawyer's conduct occurred shall apply "[i]n any exercise of the disciplinary authority of this jurisdiction."
In this case, respondent is admitted to practice in Louisiana, while his misconduct occurred in Texas. Therefore, respondent is subject to the disciplinary authority of this court, but the Texas Rules of Professional Conduct apply. In any event, the distinction is largely academic, as the Texas rules in question are substantially identical to the Louisiana rules.

In Chatelain , we observed that when a second attorney disciplinary proceeding involves conduct that occurred during the same time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the court simultaneously.